SCHWARTZ SIMON EDELSTEIN
CELSO & KESSLER LLC
44 Whippany Road, Suite 210
P.O. Box 2355
Morristown, NJ 07962
(973) 301-0001
Attorneys for Plaintiff TIPS, LLC.

RECEIVED-CLERK
U.S. DISTRICT COURT

2008 JAN 23  P 2: 07

| | |
|---|---|
| TIPS, LLC., <br><br> Plaintiff <br><br> vs. <br><br> KESTREL TECHNOLOGIES, INC., <br><br> Defendant | UNITED STATES DISTRICT COURT <br> FOR THE DISTRICT OF NEW JERSEY <br><br> CIVIL ACTION NO. 08-447 (FSH) <br><br><br> COMPLAINT |

Plaintiff TIPS, LLC ("TIPS"), by and through their undersigned counsel Schwartz Simon Edelstein Celso & Kessler, LLC, by way of Complaint against defendant Kestrel Technologies, Inc. ("Kestrel"), alleges as follows:

**PARTIES**

1. Plaintiff TIPS, LLC is a limited liability corporation duly organized and existing under the laws of Wyoming, with its principal place of business at 332 Springfield Avenue, Suite 200, Summit, New Jersey 07901.

2. On information and belief, defendant Kestrel is a corporation duly organized under the laws of Delaware, with its principal place of business at 40 Broad Street, 4th Floor, New York City, New York. Kestrel does business in the State of New Jersey.

{00341632;1}

## JURISDICTION AND VENUE

3. Subject matter jurisdiction is proper pursuant to 28 U.S.C. § 1331 and § 1338(a), as the action arises under the laws of the United States, and 28 U.S.C. § 1367 (supplemental jurisdiction). Venue is proper in this district pursuant to the provisions of 28 U.S.C. § 1400(a).

4. Defendant has committed acts of copyright infringement within the District of New Jersey including, but not limited to, allowing Kestrel's customers to use TIPS' software as part of Kestrel's software without including such customers on the list of customers for which defendant is obligated to pay royalties.

## BACKGROUND

5. Trading & Investment Programs & Systems, Inc. ("Trading"), the predecessor in interest to TIPS, was at the forefront of the development of fixed income calculations software for the financial services industry. As a result, TIPS is considered to be the industry leader in fixed income analytics. Designed to help the securities industry standardize the valuation and analysis of fixed income securities, TIPS' primary product is the "Standard Securities Calculations Software Library." The software library provides calculation routines for valuation and analysis of domestic, foreign developed and emerging market fixed income securities to developers of in-house and commercial systems.

6. Delivering on TIPS' mission to facilitate standards within the financial services industry, the library's hardware and language independence assures users of consistent results. It can be used on most industry-standard computers – from mainframes and minis to workstations and personal computers – and can be used with most common programming languages,

including C, C#, Java, Perl, COBOL, FORTRAN, RPG, PL/SQL, Visual FoxPro, Visual Basic and others.

7. TIPS software is used at leading brokerage, money management, banking and insurance firms, as well as by software development companies that develop software for those industries.

8. As part of its software maintenance services, TIPS provides its customers with on-line access to certain reference information regarding the TIPS Software via unique identification and password combinations.

9. In or about June, 2001, Trading registered TIPS' software with the United States Copyright Office and received registrations TXu000983572 and TXu000983573 ("Copyright Registrations").

10. In July, 2001, Trading sold its assets, including the TIPS Software, to TIPS. As a result, the Copyright Registrations were assigned to TIPS.

11. Kestrel, according to its own description on its website, develops highly specialized solutions for fixed income trading and research, portfolio management, risk management and connectivity. Kestrel's clients include securities dealers, brokers and asset managers. Kestrel's products are multi-currency, distributed platforms that enable users to publish orders, execute transactions, measure performance and manage risk in all securities markets anywhere in the world.

12. Many of the world's largest securities firms, including nearly two-thirds of primary U.S. government bond dealers, are clients of Kestrel Technologies.

13. Kestrel's clients also include companies that do business in foreign fixed income securities, and Kestrel therefore licensed the complete TIPS Software library, rather than the

portion of the library just dealing with fixed income securities issued under the laws of the United States.

14. In August, 1999, Kestrel entered into a Computer Software License Agreement with Trading ("License Agreement"), which license Agreement was subsequently assigned to TIPS. Under the License Agreement, Kestrel was limited to using the TIPS Software with Kestrel's RAPTr software. Schedule B-1 of the License Agreement required Kestrel to provide TIPS with quarterly statements regarding the customers who were using Kestrel's software which included the TIPS Software, including the number of individuals authorized to use the software ("Authorized Logins") at each such customer. When new customers were added, Kestrel was required to pay royalties when it submitted the quarterly statement. Kestrel was also required to provide an annual statement of the number of customers who were using Kestrel's software and the number of Authorized Logins for each such customer.

15. Initially, Kestrel used TIPS' software for the purpose of developing it RAPTr, which was in accordance with the License Agreement. At some point, the exact date of which is unknown to TIPS, without advising TIPS, Kestrel extended its use of TIPS Software to KATALYST, a different software product. According to the Kestrel website in late September, 2007, RAPTr was a trading system for sell-side fixed income trading desks, and KATALYST was a real time, web-based offering and sales system that facilitates live trade execution and negotiation.

16. Kestrel complied with the License Agreement and provided TIPS with statements and payments through the end of 2002, but it then stopped providing reports and making payments, in violation of the License Agreement.

17. After multiple contacts, TIPS received sporadic reports and some payments, which continued into 2006, and then Kestrel again stopped providing reports and payment.

18. After many efforts to contact Kestrel and obtain both reports and payment, TIPS finally received a new report from Kestrel in early 2007. As of January 1, 2007, Kestrel owed TIPS at least $68,900 in royalties and annual maintenance fee payments and $30,350 for maintenance for 2007. After review and discussion of that report, TIPS and Kestrel agreed that Kestrel owed TIPS more than $100,000. For several months, TIPS worked with Kestrel on a payment schedule. More than once, Kestrel agreed to a payment plan, only to fail to make payment and request further changes to the payment schedule.

19. In 2007, Kestrel's customers continued to use the software and Kestrel continued to take advantage of TIPS' maintenance services by making electronic inquiries to TIPS regarding the software.

20. On or about August 16 2007, as a result of not having received any payments since November, 2006 and as a result of not having received any quarterly statements in 2007, TIPS notified Kestrel that it was in material breach of the License Agreement and that it was terminating the License Agreement in accordance with paragraph 11(a)(iii) and 11(c) of the License Agreement. Pursuant to paragraph 11(c) of the License Agreement, Kestrel had 45 days to cure its breaches of the License Agreement. After repeated communications, TIPS did receive statements from Kestrel but not any payments.

21. Since the material breach was not cured by September 30, 2007, the License Agreement between TIPS and Kestrel terminated.

22. Based on the statement provided by Kestrel to TIPS in October, 2007, Kestrel continued to allow at least three of its customers to continue to use TIPS' software after

September 30, 2007, notwithstanding that its license to use TIPS' Software and therefore its right to allow its customers to use TIPS' software had terminated.

## COUNT ONE
### (Copyright Infringement)

23. TIPS repeats and re-alleges each and every allegation contained in paragraphs 1 through 22 as if fully set forth herein.

24. TIPS is the owner of the Copyright Registrations for its software.

25. The continued use of TIPS' copyrighted software by Kestrel and Kestrel's clients after the termination of the License Agreement constitutes copyright infringement.

26. Kestrel is well aware of TIPS' rights and its conduct constitutes ongoing and repeated willful infringement.

27. TIPS is entitled to all of the remedies available under the copyright statutes, including but not limited to damages for Kestrel's infringement of TIPS' copyrights, as well as an injunction prohibiting Kestrel from using, distributing or otherwise reproducing TIPS' software which is protected by those copyrights.

**WHEREFORE,** TIPS requests judgment in its favor and against Kestrel on this First Count as follows:

(a) That Kestrel, its officers, agents, servants, employees and attorneys, and all those persons in active concert or participation with them who receive actual notice of the order of this court, be permanently enjoined from infringing, in any manner, whether directly or indirectly, any of TIPS' copyrighted software and from inducing, aiding, causing or materially contributing to any such infringement;

(b) That Kestrel, its officers, agents, servants, employees and attorneys, and all those persons in active concert or participation with them who receive actual notice of the order of this court, be permanently enjoined from reproducing or distributing or both, without authorization, in any manner, whether directly or indirectly, any of TIPS' copyrighted software and from inducing, aiding, causing or materially contributing to any such unauthorized reproduction or distribution;

(c) That Kestrel, its officers, agents, servants, employees and attorneys, and all those persons in active concert or participation with them who receive actual notice of the order of this court, be required to retrieve from Kestrel's customers all copies of any TIPS Software that was provided to such customers;

(d) That Kestrel surrender for inventory and destruction all copies of TIPS' copyrighted software;

(e) That Kestrel account for and pay TIPS:

  (i) all profits, if any, earned directly or indirectly by reason of its infringement of TIPS' copyrighted software; and
  (ii) the actual damages suffered by TIPS as a result of Kestrel's copyright infringement; or
  (iii) statutory damages as provided under the copyright statute;

(f) That Kestrel account for and pay TIPS damages for its breach of the License Agreement;

(g) That Kestrel pay TIPS the royalties due for use of the TIPS Software after the termination of the License Agreement;

(h) That Kestrel pay TIPS punitive damages;

(i) That Kestrel pay TIPS prejudgment interest in accordance with the terms of the License Agreement regarding interest on late payments, the costs of suit and reasonable attorneys' fees; and

(j) That TIPS be granted expedited discovery; and

(k) That this Court grant TIPS such other and further relief as the Court may deem just and appropriate.

## COUNT TWO
**(Breach of Contract)**

28. TIPS repeats and re-alleges each and every allegation contained in paragraphs 1 through 27 as if fully set forth herein.

29. TIPS and Kestrel are parties to the License Agreement.

30. Kestrel has breached the License Agreement by failing to pay TIPS the royalties that are due pursuant to the License Agreement, by failing to provide TIPS with timely statements and by continuing to allow its customers to use TIPS' copyrighted software after the termination of the License Agreement.

31. TIPS has been damaged by Kestrel's breach of the License Agreement.

**WHEREFORE**, TIPS requests judgment in its favor and against Kestrel on this Second Count as follows:

(a) That Kestrel, its officers, agents, servants, employees and attorneys, and all those persons in active concert or participation with them who receive actual notice of the order of this court, be permanently enjoined from infringing, in any manner, whether directly or indirectly, any of TIPS' copyrighted software and from inducing, aiding, causing or materially contributing to any such infringement;

(b) That Kestrel, its officers, agents, servants, employees and attorneys, and all those persons in active concert or participation with them who receive actual notice of the order of this court, be permanently enjoined from reproducing or distributing or both, without authorization, in any manner, whether directly or indirectly, any of TIPS' copyrighted software and from inducing, aiding, causing or materially contributing to any such unauthorized reproduction or distribution;

(c) That Kestrel, its officers, agents, servants, employees and attorneys, and all those persons in active concert or participation with them who receive actual notice of the order of this court, be required to retrieve from Kestrel's customers all copies of any TIPS Software that was provided to such customers;

(d) That Kestrel surrender for inventory and destruction all copies of TIPS' copyrighted software;

(e) That Kestrel account for and pay TIPS:

   (i) all profits, if any, earned directly or indirectly by reason of its infringement of TIPS' copyrighted software; and
   (ii) the actual damages suffered by TIPS as a result of Kestrel's copyright infringement; or
   (iii) statutory damages as provided under the copyright statute;

(f) That Kestrel account for and pay TIPS damages for its breach of the License Agreement;

(g) That Kestrel pay TIPS the royalties due for use of the TIPS Software after the termination of the License Agreement;

(h) That Kestrel pay TIPS punitive damages;

(i) That Kestrel pay TIPS prejudgment interest in accordance with the terms of the License Agreement regarding interest on late payments, the costs of suit and reasonable attorneys' fees; and

(j) That TIPS be granted expedited discovery; and

(k) That this Court grant TIPS such other and further relief as the Court may deem just and appropriate. Respectfully submitted,

SCHWARTZ SIMON EDELSTEIN
CELSO & KESSLER, LLC
Attorneys for Plaintiffs

By: _____
Stephen J. Edelstein
SJE4366

Dated: January 22, 2008

RECEIVED-CLERK
U.S. DISTRICT COURT
2008 JAN 23  P 2: 01

### CERTIFICATION

Pursuant to Local Rule 11.2, I hereby certify that the matter in controversy is not the subject of any other action pending in any other court or arbitration proceeding. To the best of my knowledge and belief, no other action or arbitration proceeding is contemplated and no other parties should be joined in the above action.

SCHWARTZ SIMON EDELSTEIN
CELSO & KESSLER LLC
Attorneys for Plaintiffs

By: _____
Stephen J. Edelstein
SJE 4366

Dated: January 22, 2008